# EXHIBIT 4

PASTORSTEVE 000053-000059

JONES, DAVIS & JACKSON, PC
Attorneys + Counselors

15110 Dallas Parkway, Suite 300
Dallas, TX 75248
615.403.4862
Fax 972.733.3119

Nicole A. Westbrook
nwestbrook@jonesdavis.com
Licensed in Colorado

**PRIVILEGED AND CONFIDENTIAL:**
**ATTORNEY-CLIENT COMMUNICATION**

February 25, 2026

*VIA EMAIL: dmccabe@legacychurchnm.com*

Pastor Steve Smothermon
Legacy Church

*Re*: ***Smothermon v. Hodgetwins, LLC, et al.*, United States District Court for the District of Nevada Case No. 2:25-cv-01858)– Offer of Judgment and Anti-SLAPP Risks**

Dear Pastor Smothermon,

I am writing to update you on the recent developments in your case against Keith Hodge, Kevin Hodge, and Hodgetwins, LLC. Opposing counsel, Marc Randazza, has formally served us with an "Offer of Judgment" to settle the case. Additionally, as we have discussed, the defendants intend to file an "Anti-SLAPP" motion to dismiss your lawsuit.

We need to make a strategic decision on how to proceed. This letter explains the settlement offer, the risks associated with the upcoming Anti-SLAPP motion, and the legal arguments both sides are preparing.

**1. The Offer of Judgment**

On February 17, 2026, the defendants served us with a formal Offer of Judgment under Rule 68 of the Federal Rules of Civil Procedure. They are offering to allow a judgment to be entered against them in the amount of $5,000.00, which would fully resolve and dismiss all of your claims. Under Rule 68, if you decline this $5,000 offer and we proceed to trial, but the final judgment you win is less than $5,000, you will be legally obligated to pay the defendants' court costs incurred after the date this offer was made. We have 14 days from February 17 (until March 3, 2026) to accept this offer before it is automatically withdrawn.

In federal court, the costs that can be shifted to the other party are generally limited to specific types of expenses

- Fees paid to the court clerk and marshal
- Fees for court transcripts used in the case
- Fees for printing and witness attendance
- Copying costs that were necessary for the lawsuit

At this stage in the case, it is impossible to predict the magnitude of such costs.

**2. The Threat of an Anti-SLAPP Motion**

If we reject the $5,000 offer, the defendants will file a special motion to dismiss under Nevada's Anti-SLAPP (Strategic Lawsuits Against Public Participation) law.

Anti-SLAPP laws are designed to quickly dismiss lawsuits that allegedly threaten free speech on issues of public concern. The primary risk here is financial: if the judge grants their Anti-SLAPP motion and dismisses our case, the law mandates that you pay the defendants' reasonable attorneys' fees and costs. Because Mr. Randazza thinks of himself as a prominent First Amendment attorney, he has argued that these fees could be exceptionally high.

**3. The Defendants' Arguments**

Mr. Randazza sent a letter outlining the arguments they will use in their Anti-SLAPP motion. They argue your case will fail for the following reasons:

• You are a Public Figure: Because of your 90,000 YouTube followers and leadership at Legacy Church, they argue you are a public figure. Therefore, you must prove actual malice—meaning the Hodgetwins knew their post was false or acted with reckless disregard for the truth.

• The Innocent Mistake Defense: They claim mixing you up with Steve Smotherman (the Cracker Barrel DEI executive) was merely an innocent error. They argue it is a common mistake and point out that search engines like Google and AI tools also conflate your identities.

• Woke is Opinion, Not Fact: They argue that calling someone woke, anti-American, or against family values is subjective political hyperbole and cannot be proven true or false, meaning it cannot be defamatory under the First Amendment.

• Lack of Damages: They assert you suffered no real harm because anyone who knows you would immediately realize the post was false, while strangers would only form a negative opinion about the Cracker Barrel executive, not you.

**4. Our Counter-Arguments**

We responded to Mr. Randazza with a strong opposition letter, dismantling their claims. If we proceed, our defense against their Anti-SLAPP motion will rely on the following:

• This is Fact-Based Defamation: We argued that the Hodgetwins did not just call you woke as an opinion. They explicitly published your photograph alongside verifiable, factual

assertions—claiming you were the architect of a corporate rebranding strategy, founded an LGBT employee group, and caused a $145 million loss in brand value. Attributing these specific corporate actions to a conservative pastor is defamatory per se.

• They Acted with Actual Malice: The Hodgetwins are not casual internet users; they are a highly sophisticated media entity with 6.3 million followers. The visual difference between you and the corporate executive is obvious, as is the spelling of your last names. A simple verification would have revealed the incongruity of a conservative pastor running a corporate HR department. Their failure to check is the very definition of reckless disregard for the truth.

• Federal Discovery Rules Protect Us: In federal court, if an Anti-SLAPP motion challenges the factual basis of a claim (like whether they acted with actual malice), the court treats it like a summary judgment motion and must allow us to conduct discovery first. We intend to depose the Hodgetwins under oath about their deeply flawed editorial standards before the judge can rule.

• Favorable Precedent: We are heavily relying on a recent Nevada Supreme Court case, *Schuman v. Carter*, which clarifies that you only need to present prima facie evidence (a reasonable probability) of prevailing on the defamation claim to defeat an Anti-SLAPP motion. We believe the sheer negligence of conflating a religious leader with a DEI executive meets this burden.

**Next Steps**

We must weigh the principle of holding the Hodgetwins accountable against the financial risk of having to pay their attorneys' fees if the judge sides with them on the Anti-SLAPP motion.

Please review this information carefully. I recommend we schedule a call in the next week to discuss whether you would like to accept the $5,000 Offer of Judgment to close this matter, or if you wish to reject it and fight the forthcoming Anti-SLAPP motion.

Sincerely yours,

JONES, DAVIS & JACKSON, PC

By: ______________________________
Nicole A. Westbrook

CC: Steve Jones
Mike Jackson

**JONES, DAVIS &**
**JACKSON, PC**
Attorneys + Counselors

15110 Dallas Parkway, Suite 300
Dallas, TX 75248
972.733.3117
Fax 972.733.3119

## CONFIDENTIAL ATTORNEY-CLIENT WORK PRODUCT

**TO:** R. Steven Jones, Esq.

**FROM:** Paul W. Bishop, III

**DATE:** June 18, 2026

**MATTER:** *Smothermon v. Hodgetwins, LLC* (No. 2:25-cv-01858)

**SUBJECT:** Plaintiff's Image Analysis Brief Regarding Likelihood of Recklessness

## PLAINTIFF'S IMAGE ANALYSIS BRIEF

Combining the TinEye 'zero-match' result with the Google Lens 'AI Overview' proves extreme recklessness: the Defendants had to bypass standard public image feeds and harvest this photo from distinctly labeled religious sources, intentionally ignoring giant, instantaneous AI warnings that explicitly identified the man as a pastor rather than a corporate executive.

***TinEye Search Result (No Results) v. Google Lens (Only Church Related Results)***

***(Comparison as of June 17, 2026)***







**<u>What is TinEye?</u>** TinEye is a website that lets you search the internet using a picture instead of words to see where else that picture has been published (TinEye Search Verification, June 17, 2026). It acts like a digital detective, scanning a massive, constantly updated database of over 84 billion photos to look for exact copies, cropped versions, or edited duplicates of a specific image (*id.*). In this case, our search of Pastor Smothermon's portrait on TinEye returned exactly zero matches across the entire open internet, **which proves** that the photo was not a generic public stock asset, but a proprietary file anchored to Legacy Church and Pastor Smothermon's specific leadership platforms, meaning the Defendants had to intentionally strip away the religious context to repurpose the image.

**<u>What is Google Lens?</u>** Google Lens is another search tool that looks at the faces, clothes, and backgrounds in a photo to identify the subject and instantly show you their real-world identity (Google Reverse Image Search Verification, June 17, 2026). It acts like an instant scanner, connecting the user directly to the exact websites where that specific person's name and job are listed (*id.*). When we

ran the Pastor's picture through this tool, Google Lens immediately displayed a highly visible "AI Overview" text box stating that the man pictured is the senior pastor of Legacy Church in Albuquerque, New Mexico (Facebook Screenshot Capture, *infra*).

***Facebook Screenshot Capture***



While this search comparison is not absolute proof on its own because we do not have the Defendants' internal team emails or personal notes, it still provides the court with very strong objective evidence of actual malice (*see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) (holding that while failing to investigate is not enough by itself, deliberately ignoring obvious facts staring you in the face supports a finding of actual malice)).

First, because the TinEye zero-match analysis confirms this portrait is not a widely circulated public asset, the Defendants had to deliberately bypass standard indexing warnings to harvest the photo from distinctly marked religious sources where the Pastor's identity was clearly displayed.

Second, the Google Lens scan shows that if they had done even a basic, one-second check before publishing, a giant warning box would have flashed on their screens identifying him as a pastor.

Third, choosing to bypass these easy, instantaneous checks to run a sensationalized story and sell t-shirts constitutes the purposeful avoidance of the truth, establishing clear actual malice (*see Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989);

*cf. Long v. Beasley*, 2025 WL 1109015, at *15 (distinguishing innocent social media mistakes where defendants lacked the objective verification tools available here)).

In conclusion, the Defendants' deliberate avoidance of obvious verification tools to harvest a proprietary religious asset constitutes clear and extreme recklessness, fully satisfying the standard for actual malice.

Best regards,

s/ Paul W. Bishop, III