G. Michael Jackson, State Bar No. 1894
Nicole A. Westbrook, *pro hac vice*
**JONES, DAVIS & JACKSON, P.C.**
25350 Magic Mountain Parkway, Suite 300
Valencia, CA 91355
Telephone: (661) 481-2220
Facsimile: (661) 836-7711
Email: mjackson@jonesdavis.com
nwestbrook@jonesdavis.com

*Attorneys for Plaintiff Pastor Steve Smothermon*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **PASTOR STEVE SMOTHERMON**,<br><br>Plaintiff,<br><br>v.<br><br>**KEITH HODGE**, an individual; **KEVIN HODGE**, an individual; **HODGETWINS, LLC**, a Nevada limited liability company;<br><br>Defendants. | Case No.: 2:25-cv-01858-APG-BNW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF ROBERT J. FISHER** |

Defendants' motion asks this Court to do what Rule 702 reserves for the jury: weigh an expert's factual basis, test his assumptions, and decide whether his conclusions are correct. Across thirty-one pages, Defendants catalog their disagreements with Robert J. Fisher — that he relied on materials their opponent supplied, that he did not run their preferred searches, that he did not quantify a "before" measurement, and that they find his reputation-management conclusions unpersuasive. Every one of those complaints is classic cross-examination material. But not one is a ground for exclusion.

The governing question is whether the testimony is reliable and helpful, not whether it is right. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.

2010). The trial court is "a gatekeeper, not a fact finder," *id.* at 565 (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)), and "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). Mr. Fisher is a public-relations and reputation-management practitioner with roughly fifty years in the field, including about forty reputation-repair programs. Fisher Rep. at 3, 5 (ECF No. 121-2); Fisher Dep. 17:10-11, 68:14-15. He will help the jury understand how a false association damages the reputation of a public religious figure and what it costs to repair. Defendants treat that subject as proper expert terrain: they designated their own reputation expert to opine on Plaintiff's "claims of reputational damage," ECF No. 126-4 at 1, and their motion relies throughout on the opinions of their rebuttal expert, Eric Rose. ECF No. 121 at 7, 14, 17, 19.

Plaintiff does not dispute that a limited set of passages in Mr. Fisher's report should not go to the jury: recitations of the legal elements of defamation, characterizations of Defendants' state of mind, passages he labeled personal opinion, and passages that report counsel's image-search findings rather than his own work. The remedy for those passages is a targeted limitation, not the wholesale exclusion Defendants seek. The motion should be denied.

**LEGAL STANDARD**

Federal Rule of Evidence 702 permits a qualified expert to testify if the proponent shows the court that each of its requirements is more likely than not met. Fed. R. Evid. 702. The expert's knowledge must help the trier of fact, the testimony must rest on sufficient facts or data and reliable principles and methods, and the opinion must reliably apply those methods to the facts of the case. *Id.* Plaintiff accepts that burden. The 2023 amendment did not make the gatekeeper the fact finder. As the advisory committee explained, "once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. The Ninth Circuit has confirmed the preponderance burden and that "there is no presumption in favor of admission." *Engilis v. Monsanto Co., 151* F.4th 1040, 1049 (9th Cir. 2025). The test remains "not the

correctness of the expert's conclusions but the soundness of his methodology." *Primiano*, 598 F.3d at 564 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995)). The inquiry is "a flexible one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). Once the threshold is met, "the expert may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d at 565.

Two principles control this motion. First, the judge "is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car,* 738 F.3d at 969. "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge," and "[a] district court should not make credibility determinations that are reserved for the jury." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). Second, for experience-based testimony like Mr. Fisher's, *Kumho Tire* "heavily emphasizes that judges are entitled to broad discretion," and the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (emphasis added in *Hangarter*) (quoting *United States v. Hankey*, 203 F.3d 1160, 1168–69 (9th Cir. 2000)); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 119 S. Ct. 1167 (1999). Reliability therefore turns on whether "the knowledge underlying [the opinion] has a reliable basis in the knowledge and experience of the relevant discipline," *Primiano*, 598 F.3d at 565 (internal quotation marks and citation omitted), and "[l]ack of certainty is not, for a qualified expert, the same thing as guesswork," *id.*

## ARGUMENT

### 1. Mr. Fisher is qualified by experience, and his testimony will help the jury on a subject on which Defendants offer experts of their own.

Defendants argue (Mot. § 4.1.1) that Mr. Fisher offers no specialized knowledge that helps the jury. The record shows otherwise. Mr. Fisher ran his own public-relations firm for forty-two years and has designed and run about forty reputation-repair programs. Fisher Rep. at 3, 5; Fisher

Dep. 12:12-15, 17:10-11. For experience-based testimony, that background is the measure of reliability: the opinion is reliable if "the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (internal quotation marks and citation omitted). The Ninth Circuit does not demand peer-reviewed error rates of an experience-based witness; those "*Daubert* factors . . . simply are not applicable" to this kind of testimony. *Hangarter*, 373 F.3d at 1017 (quoting *Hankey*, 203 F.3d at 1169). Mr. Fisher also explained how his experience produces his conclusions: much of the information-gathering in his report could be replicated by others, but the opinion and conclusion section "could not be done by someone that didn't have the frame of reference" of having run reputation-repair programs. Fisher Dep. 290:3-11; *see id*. 281:12-19.

How a false public association damages the standing of a religious leader, and how reputation-repair programs are structured and priced, are not matters within jurors' ordinary experience. A lay jury has no experience valuing goodwill, assessing the persistence of online content, or scoping a remediation program. Mr. Fisher described a defined method: educate himself on all aspects of the dispute, take in both sides' positions, review the discovery and information provided to him, apply the principles of negative communications, and compare the situation with the reputation work and cases he has handled. Fisher Dep. 269:13-270:20, 271:15-19; Fisher Rep. at 23-24. He testified that public-relations professionals and reputation experts use the same steps. Fisher Dep. 272:25-273:5.

Defendants' own litigation conduct refutes their theory that expert testimony on reputation harm will not help the jury. They designated Matthew Shupe, a public-relations professional, to opine on the same subject: Plaintiff's "claims of reputational damage resulting from a Facebook post that erroneously contained his image." ECF No. 126-4 at 1. Their motion relies on their rebuttal expert, Eric Rose, for what a reputation analyst should measure and how. ECF No. 121 at 14, 16, 19. Defendants cannot tell the Court that the remaining questions are "within the jury's own competence," ECF No. 121 at 15, while offering two reputation experts of their own on the same questions. Where qualified experts disagree, "[a] factual dispute is best settled by a battle of

the experts before the fact finder, not by judicial fiat." *City of Pomona*, 750 F.3d at 1049.

**2. Mr. Fisher's opinions rest on sufficient facts and data; Defendants' remaining disputes about his sources go to weight.**

The bulk of the motion (Mot. §§ 4.1.2, 4.1.4) argues that Mr. Fisher did not gather enough facts and leaned on materials Plaintiff's counsel provided. Under amended Rule 702 the Court decides by a preponderance whether the basis is sufficient, and it is. Mr. Fisher reviewed sixty-five items, including the pleadings, the parties' filings and discovery, Legacy Church materials, social-media captures and correspondence, and he ran his own searches. Fisher Rep. at 20-22, 24-25. Rule 703 permits an expert to base an opinion on "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Mr. Fisher received the case materials from Plaintiff's counsel. Fisher Rep. at 20, 22. Once that threshold is met, which of the disputed facts are true is for the jury. In *Hangarter*, the defendant argued that the expert's "selection of documents to review went to the reliability of his 'methodology' as an expert," and the Ninth Circuit answered that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." 373 F.3d at 1017–18 n.14 (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)) (internal quotation marks omitted). That answers Defendants' complaint that Mr. Fisher relied on information supplied by the party that retained him. The few passages of the report that recount counsel's image-search findings rather than Mr. Fisher's own work are addressed in Section 5 below.

The same is true of Defendants' catalog of things Mr. Fisher did not do: no interviews, no independent measurements, no reverse-image search. In *Primiano*, the expert never examined or spoke with the plaintiff and cited no supporting publication; the Ninth Circuit held that those points "might be useful to the jury as impeachment, but neither furnished an adequate basis for excluding his opinion," and that "the gate could not be closed to this relevant opinion offered with sufficient foundation by one qualified to give it." 598 F.3d at 567–68. In *Alaska Rent-A-Car*, the challenger's attacks on the expert's comparator, baseline, and extrapolations were "colorable, but none go to admissibility. They amount to impeachment." 738 F.3d at 969–70. And in *Pyramid Technologies*,

the Ninth Circuit reversed the exclusion of two experts, holding that "[a]fter an expert establishes admissibility to the judge's satisfaction, challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014). Defendants will be free to cross-examine Mr. Fisher on each asserted gap and to present their own experts' contrary views (assuming their AI expert, Shupe, survives a motion to exclude); that is the remedy the Rules prescribe. *City of Pomona*, 750 F.3d at 1049.

Defendants' reliance on the "analytical gap" / *ipse dixit* principle does not change the analysis. That principle screens out opinions connected to the data "only by the *ipse dixit* of the expert," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); it does not authorize exclusion of an experience-based opinion simply because the opponent disputes its assumptions. As one court in this Circuit explained, "[a]n impermissible analytic gap is not created merely because [an expert's] opinions are not statistically and/or mathematically quantified"; such challenges "bear on weight, not admissibility." *Kim v. Crocs, Inc.*, No. 16-00460 JAO-KJM, ECF No. 376 at 17, 2018 WL 6435326 (D. Haw. Dec. 7, 2018). And it is irrelevant, "for threshold admissibility purposes," that an expert's assumptions "may be proved inaccurate at trial;" what matters is "that they have some basis in the record." *Unknown Party v. Ariz. Bd. of Regents*, 641 F. Supp. 3d 702, 727 (D. Ariz. 2022).

**3. The absence of a precise pre-publication "baseline" and exact damages figure goes to weight; reputational harm need not be quantified with mathematical precision.**

Defendants argue (Mot. § 4.1.2.2) that every damages opinion fails because Mr. Fisher established no quantified "before" measurement of Plaintiff's reputation. The law has never required that. The Supreme Court long ago distinguished the proof needed to establish that a plaintiff "sustained some damage" from "the measure of proof necessary to enable the jury to fix the amount." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931). Where the wrong itself makes exact measurement difficult, "it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only

approximate," and "[t]he wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise." *Id. at* 563. A defamation defendant who published a false association cannot demand that the plaintiff's expert produce the very precision the defamation made impossible.

Courts have applied these principles to reputation-repair testimony. In *Platinum Properties*, the court allowed a reputation expert to testify to his calculation of the cost of a reputational-repair campaign. It held that the defendants' complaints that the calculations "are subjective and fail to take into account prior reputational repair campaigns" were "for cross-examination," because "[t]he general rule [is] that the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *Platinum Props. Inv. Network, Inc. v. Sells*, No. 18-61907-CV-SMITH, ECF No. 218 at 3 2021 WL 4428991 (S.D. Fla. Mar. 22, 2021) (internal quotation marks and citations omitted). The same order barred that expert from testifying to the extent of reputational harm, because he had shown no methodology for those conclusions. *Platinum Props., ECF* No. 218 at 2. Mr. Fisher, by contrast, described the method behind his harm opinion and applied it to the record of this case. Fisher Dep. 269:13-270:20; Fisher Rep. at 23-24.

Plaintiff acknowledges that Mr. Fisher testified that the dollar range stated in the report ($2.65 million to $5.589 million) came from "the lawyer or the client" and is "not my number." Fisher Dep. 103:11-18, 365:1-9; *see* Fisher Rep. at 42. Mr. Fisher accordingly will not offer that aggregate figure, or any view of its reasonableness, as his own opinion. His admissible testimony is different and proper: that the misidentification of a Bible-based pastor as a corporate champion of the causes he publicly opposes is the kind of association that causes reputational harm, that such harm is not erased by a prompt takedown, and that a structured repair program is warranted at an estimated cost of $325,000 to $350,000, based on his experience designing such programs. Fisher Rep. at 28, 34, 37, 41-42; Fisher Dep. 107:2-5, 321:11-12. Defendants examined him on components of that program at deposition. Fisher Dep. 353:14-363:10. Those opinions rest on his experience and will aid the jury; their precision, or asserted lack of it, goes to weight, which is for

the jury. *See Story Parchment*, 282 U.S. at 563, 567.

**4. Mr. Fisher's exclusion in the *Carroll* litigation does not control this case.**

Defendants devote substantial attention to Judge Kaplan's exclusion of Mr. Fisher in the *Carroll v. Trump* cases. ECF No. 121 at 8-10. A prior exclusion of the same expert, in a different case on a different record, does not decide this motion. In *Heller*, the court agreed that its gatekeeping role "requires independent, case-by-case evaluation of expert opinions, not 'copying and pasting judicial reasoning' from different cases with different facts." It also agreed that "it is likewise improper to exclude an expert's opinion solely because the expert's opinion has been excluded in another context." *United States ex rel. Heller v. Guardian Pharmacy of Atlanta, LLC*, No. 1:18-cv-03728-SDG, ECF No. 226 at 46–47, 2023 WL 11909741 (N.D. Ga. Sept. 30, 2023) (internal quotation marks and citations omitted). The *Carroll* rulings turned on a different record: a different plaintiff, a different alleged defamation, and different proffered opinions. By Defendants' own account, his research there was about an hour of "Googl[ing]" the plaintiff, ECF No. 121 at 10; here he reviewed sixty-five items from this case before forming his opinions. Fisher Rep. at 20-22. The *Carroll* excerpt Defendants attach also explains a difference they cite: he left a saying out of his Carroll report because it prefaces a repair program, which he did not write there, and because he was retained by the defendant in that case. ECF No. 121-6 at 14 (Carroll Dep. 399:5-11). The question under Rule 702 is whether *these* opinions, on *this* record, meet its requirements, and the *Carroll* rulings provide nothing to this Court.

**5. To the extent discrete statements stray into legal conclusions or state of mind, the remedy is a targeted limitation, not exclusion of the witness.**

Defendants correctly observe (Mot. §§ 3.0, 4.2.2) that an expert may not instruct the jury on the law or opine on a party's state of mind. Plaintiff does not ask the Court to admit such testimony. Mr. Fisher will not recite or apply the legal elements of defamation (Fisher Rep. at 25), will not repeat the allegations of malice or recklessness the report recounts (*id*. at 14-17, 30, 43), will not opine that Defendants acted with "malice," "carelessness," or "conscious avoidance," and will not characterize what Defendants knew or intended. That limitation tracks his testimony: he

is "not allowed to get into liability," and he offers no opinion that either defendant knew the photograph was wrong. Fisher Dep. 46:22-47:3, 190:21-191:2, 305:18-21, 308:17-24, 310:20-24. Nor will he present the passages he labeled personal opinion (Fisher Rep. at 33-34, 44), or, as his own findings, the passages that report counsel's image-search, metadata, and incognito findings (*id*. at 24, 30). *See* Fisher Dep. 269:2-6. Concerns of this kind are cured by striking the specific statements, not by excluding the expert. An expert "may even come to conclusions as to the 'ultimate issues,' but he may not invade the province of the jury by describing the law." *Igwe v. Skaggs*, No. 16-1403, ECF No. 183 at 3, 2017 WL 5129031 (W.D. Pa. July 7, 2017). The court there struck the expert's "legal conclusion interpreting case law but not statements on ultimate issues," and allowed the rest of his challenged statements "subject to cross examination." *Id. at* 1–2. In *Hangarter*, on which Defendants rely, the Ninth Circuit held that the district court did not abuse its discretion in admitting an expert's testimony that referred to state statutes, because those references were "ancillary to the ultimate issue of bad faith." 373 F.3d at 1016–17. The cure Defendants are entitled to, if any, is narrow.

Defendants' Rule 403 objection to isolated words ("demonic," "malicious," "rage bait") is likewise a request for redaction, not exclusion. Mr. Fisher's own uses of those words appear on two pages of a forty-five-page report (Fisher Rep. at 33, 43), and Plaintiff will not elicit them before the jury. Their presence does not render the witness's core reputational-harm and repair opinions inadmissible.

**6. The request to reduce Mr. Fisher's fee is not a Rule 702 question.**

Finally, Defendants ask (Mot. § 4.2.5) that the Court reduce Mr. Fisher's deposition rate to $250 per hour. That request has nothing to do with the admissibility of expert testimony under Rule 702. It is a separate request for relief, governed by Rule 26(b)(4)(E), which, unless manifest injustice would result, requires the party seeking discovery to pay the expert "a reasonable fee for time spent in responding to discovery," and this District requires each type of relief to be sought in a separate document. Fed. R. Civ. P. 26(b)(4)(E)(i); LR IC 2-2(b). If the Court reaches it, the $250 figure is Mr. Fisher's estimate of what someone would charge for the audit portion of a *repair*

program, Fisher Dep. 356:7-10, not a rate for expert testimony. His deposition rate of $975 per hour was disclosed in his report before Defendants deposed him. Fisher Rep. at 3. Court should decline to reduce it on this motion.

**CONCLUSION**

Defendants' motion is an invitation to weigh Mr. Fisher's testimony rather than to perform the gatekeeping Rule 702 requires. His opinions rest on a reliable foundation in decades of reputation-management experience, address a subject on which Defendants offer two experts of their own, and will assist the jury. Once the Rule 702 threshold is met, Defendants' objections to his factual basis, his sources, his assumptions, the absence of a quantified baseline, and his prior exclusion in an unrelated case go to weight and credibility, to be tested by cross-examination and contrary evidence, not by exclusion. *Alaska Rent-A-Car,* 738 F.3d at 969–70; *Primiano*, 598 F.3d at 564. To the extent any passage crosses into legal conclusions, state of mind, personal opinion, or counsel's findings, the remedy is the targeted limitation *described in Section* 5. Plaintiff respectfully requests that the Court deny Defendants' motion to exclude, grant no more than that limitation, and deny the request to reduce Mr. Fisher's rate.

Respectfully submitted this 29th day of October, 2026.

*/s/ Nicole A. Westbrook*
Nicole A. Westbrook
G. Michael Jackson Esq.
**JONES, DAVIS & JACKSON, P.C.**

*Attorneys for Pastor Steve Smothermon*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 29, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document was served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
RANDAZZA LEGAL GROUP, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147

*Attorneys for Defendants*
*Keith Hodge, Kevin Hodge, and Hodgetwins, LLC*

/s/ *Nicole A. Westbrook*