RANDAZZA | LEGAL GROUP

Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
Randazza Legal Group, PLLC
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147
Telephone: 702-420-2001
ecf@randazza.com

*Attorneys for Defendants*
*Keith Hodge, Kevin Hodge, and Hodgetwins, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| PASTOR STEVE SMOTHERMON,<br><br>Plaintiff,<br><br>v.<br><br>KEITH HODGE, an individual; KEVIN HODGE, an individual; HODGETWINS, LLC, a limited liability company,<br><br>Defendants. | Case No. 2:25-cv-01858-APG-BNW |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S PROPOSED EXPERT ROBERT J. FISHER [ECF NO. 121]**

Defendants Keith Hodge, Kevin Hodge, and Hodgetwins, LLC, submit this reply in support of their Motion to Exclude Robert J. Fisher (ECF No. 121).

## 1.0 INTRODUCTION

It is unfortunate that Plaintiff's counsel refused to meet and confer despite defense counsel making **ten** attempts to do so between October 12 and 15. ECF No. 121-1 ¶¶ 7–19. Plaintiff's counsel said she did not "believe it makes sense at this time to waste money on a conferral." *Id.* ¶ 14. But now that briefing is in, it shows it would have made sense. *Now*, Plaintiff agrees that Mr. Fisher will not offer the $2.65 million to $5.589 million damages range "or any view of its reasonableness." Plaintiff agrees Fisher will not try to recite or apply the elements of defamation, will not re-offer his "expert opinion" that Defendants acted with "malice," "carelessness," or

"conscious avoidance," will not present passages from his report that he labeled as personal opinions, and will not present Plaintiff's counsel's findings as his own. ECF No. 128 at 7–9. Those concessions remove damages, fault, and Plaintiff's counsel's "study" from Mr. Fisher's report. They also eliminate the report's ultimate conclusion, that Plaintiff "suffered irreparable reputation harm," which Mr. Fisher closed with "[t]his is my personal opinion." ECF No. 121-2 at 45. That could have all been resolved before filing, had Plaintiff's counsel not refused to confer.

Plaintiff wants to keep three things: Misidentifying a conservative Christian pastor as a champion of DEI is "the kind of association that causes reputational harm," that the harm "is not erased by a prompt takedown," and that a $325,000 to $350,000 repair program is supported. ECF No. 128 at 7. He defends them by saying every objection should simply go to weight. But that is not how it works anymore. In 2023, Rule 702 was amended to eliminate that argument. Mr. Fisher called his own duration opinion "a supposition, obviously," and his report says the extent of Plaintiff's supposed harm "is still to be determined." ECF No. 123-1 at 185 (325:15–18); ECF No. 121-2 at 44. Defendants' experts, in contrast, actually did the work of "experts" and conducted the kind of study that an expert should.

## 2.0 CONCESSIONS AND WAIVERS RESOLVE MOST OF THE ISSUES

### 2.1 The Concessions Need to Be Reduced to an Order

Plaintiff tries to pull one over on us. He says that all of his concessions are things that he "will not elicit." ECF No. 128 at 8–9. But that is not an order, and if it becomes an issue for trial or summary judgment, Mr. Fisher will bring his report to the stand. Relevant to summary judgment, the Court should exclude everything conceded with an order: especially damages. ECF No. 121-2 at 43. Should the case progress past summary judgment (it should not), Fisher's report should also be stricken with respect to any discussion of the elements of defamation (*id.* at 26-27); Fisher's characterization of Defendants' knowledge, intent, care, or malice (*id.* at 15–18, 30–31, 34, 44) should be stricken too; and every portion labeled personal opinion needs to go (*id.* at 34–35, 45); and the three characterizations Plaintiff agrees not to use. *Id.* at 15, 18, 34–35, 44.

RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

The opposition's phrasing carefully and cleverly leaves the option open to bring all of that back in. Plaintiff concedes that Mr. Fisher will not present counsel's image-search, metadata, and incognito findings "as his own findings." ECF No. 128 at 9. At his deposition he testified that he did not even know what those things meant. ECF No. 123-1 at 34 (75:3–13); *id.* at 154 (269:1–8). So the concession leaves open room for Fisher to simply recite these things as what he was told. Rule 703 bars presenting otherwise inadmissible facts underlying an opinion unless their probative value substantially outweighs their prejudicial effect. Fed. R. Evid. 703. A lawyer's work-product memorandum that Mr. Fisher never saw, whose author he cannot name, and which he agreed counsel "could have just made it up" does not satisfy this standard. ECF No. 123-1 at 80-83 (138:23–141:25). Language copied from interrogatories and counsel's memo should be excluded by order and without wiggle room to get out from under it. ECF No. 121-2 at 25, 30–34.

### 2.2 Plaintiff Waives Much of What Was Challenged

The opposition fails to defend the report's clinical opinions ("anguish, fear, depression, anxiety, [and] apprehension"), or the speculation about divorce and children being "physically attacked." ECF No. 121-2 at 37; ECF No. 121 at 21. It does not defend the made-up claim that congregants have left the church over the picture at issue, and perhaps that is because it could not – as Mr. Fisher testified that he has "no evidence." ECF No. 121-2 at 36; ECF No. 123-1 at 176 (312:14–16). It doesn't defend the figures Mr. Fisher may have taken from Wikipedia and never verified (ECF No. 121-2 at 11–12; ECF No. 123-1 at 195 (345:3–20)), the "Bond of Trust" opinion that contradicts his *Carroll* testimony (ECF No. 121-2 at 27; ECF No. 121-3 at 18–19), the opinion that it is "not plausible that anyone" could confuse Smothermon and Smotherman, which he quickly abandoned when questioned under oath (ECF No. 121-2 at 34; ECF No. 123-1 at 132 (237:21–25)), or the report's claim that he found no negative information about Plaintiff, which Mr. Rose found "not accurate" (ECF No. 121-2 at 30; ECF No. 121-3 at 9). The Court should order all of this excluded. *Cf.* LR 7-2(d).

RANDAZZA | LEGAL GROUP

## 3.0 THE OPPOSITION RELIES ON OUTDATED LAW

### 3.1 Sufficiency and Application Are Threshold Questions

Plaintiff "accepts" the preponderance burden (ECF No. 128 at 2) and then says that every shortfall in Mr. Fisher's testimony goes only to weight. His cases all predate the 2023 amendment to Rule 702 and must be read through it: *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004); *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010); *Alaska Rent-A-Car v. Avis Budget Grp., Inc.*, 738 F.3d 960 (9th Cir. 2013); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014); and *Pyramid Technologies v. Hartford Cas. Ins. Co.*, 752 F.3d 807 (9th Cir. 2014). His primary argument is derived from a footnote in *Hangarter* that quotes an even older Eighth Circuit decision that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." ECF No. 128 at 5. *Hangarter*, 373 F.3d at 1017–18 n.14 (*quoting Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)). That is the exact rule the Advisory Committee saw as a problem that the 2023 amendment to Rule 702 was intended to cure. Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("These rulings are an incorrect application of Rules 702 and 104(a)."). Before that, "many courts" had wrongly held "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025) (quoting 2023 advisory committee's note).

The Ninth Circuit tells us what to do when reading its earlier cases. "[S]haky" testimony "must still be 'admissible,'" which requires a finding that it meets Rule 702. *Id.* at 1050. Plaintiff selectively quotes the advisory statement that challenges go to weight "once the court has found it more likely than not that the admissibility requirement has been met." ECF No. 128 at 2. Plaintiff misses that, after 2023, it must be determined to be admissible first.

### 3.2 "Lived Experience" Is Not a Method; the Expert Claims No One Can Test It

Reliability matters more when an opinion relies on experience that can't be tested by error rates or peer review. *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020). In that circumstance, an expert must explain how his experience leads to the conclusion reached and how

RANDAZZA | LEGAL GROUP

it was reliably applied to the facts. Fed. R. Evid. 702 advisory committee's note to 2000 amendment. An expert's "mere talismanic invocation" of experience does not create that reliability. The expert's report must "describe the details" of the experience it relies on. *Engilis*, 151 F.4th at 1054. Fisher does not do that. In fact, he mocks any notion thereof. His standards are "[n]ot written," and peer review is "BS." ECF No. 123-1 at 39, 160-61 (84:20–22, 286:20–287:14).

Plaintiff's attempt to show us a "defined method" shows us that he has none. *Id.* at 154-55 (269:13–270:20); ECF No. 128 at 4. In that portion of the deposition, Mr. Fisher explained that applying his principles "depends on whether I'm representing the plaintiff or the defendant," and "[i]f I'm representing the plaintiff, I apply them to see what . . . is appropriate to them." *Id.* at 155 (270:13–22). The same passage invokes "32 points that relate to negative communications" (*id.* (270:17–20)) that appear nowhere in his report. Instead, his report rests on four adages with all the authority found in a greeting card or a fortune cookie as "the basis of many of my conclusions and opinions." ECF No. 121-2 at 28. A report must contain "a complete statement of all opinions" and "the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Fisher instead gives us anecdotes and old adages that he applies differently, *depending on who retained him*. That is not a reliable method reliably applied. Fed. R. Evid. 702(c)–(d). That is being paid to say what a party tells you to say. That is not the proper function of an expert. That is just trying to game the system.

Plaintiff's other methodology proof is Mr. Fisher's testimony that his conclusions "could not be done by someone that didn't have the frame of reference" he has. ECF No. 128 at 4; ECF No. 123-1 at 162 (290:3–11). He then testified that "probably 80 percent of the report" could be produced by anyone given the same documents. *Id.* As for the rest: "You can't replicate that . . . Nobody else can do it." *Id.* at 158-59 (281:22–282:4). So, by Plaintiff's own account, the only "expert" part of the report is the part that nobody can ever check or replicate. That is an opinion connected to the data "only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Plaintiff's claim that other professionals use "the same steps" (ECF No. 128 at 4) relies on nothing but Mr. Fisher's say-so and is contradicted by the real expert, Mr. Rose.

RANDAZZA | LEGAL GROUP

## 4.0 THE OPINIONS DO NOT MEET RULE 702

### 4.1 "The Kind of Association That Causes Reputational Harm"

Plaintiff says Mr. Fisher will testify that misidentifying "a Bible-based pastor as a corporate champion of the causes he publicly opposes is the kind of association that causes reputational harm." ECF No. 128 at 7. That is just him testifying to a legal conclusion: whether a statement would "tend to lower the subject in the estimation of the community," as the report puts it in the section Plaintiff has now withdrawn. ECF No. 121-2 at 26. Whether a statement is defamatory is a question of law. *Lubin v. Kunin*, 117 Nev. 107, 111, 17 P.3d 422, 425–26 (2001). A publicist's opinion is of no relevance. Plaintiff claims to concede that Fisher will not testify as to the elements of defamation, but he says he may testify that one of them is met?

Even if the opinion were included, its premise is that the post said Plaintiff was "anti-family and anti-American." ECF No. 121-2 at 35. Fisher admitted under oath that the post does not say that and that he "picked up" the characterization from the Plaintiff. ECF No. 123-1 at 133-35 (239:11–241:19). His opinion requires us to have a baseline as to what Plaintiff's congregation believes. But Fisher does not "claim to be an expert on the Bible," has never heard Plaintiff preach, and is not "familiar specifically with him." *Id.* at 61-2, 138-39, 193 (114:2–3, 115:18–25, 250:25–251:1, 342:3–10). Plaintiff does not defend Fisher's qualifications to opine on religious doctrine. Matthew Shupe, the only expert who actually did the research with any methodology – searching for what the public actually thinks about the Plaintiff – could find no source that suggests that the Defendants in any way painted Plaintiff with that brush. ECF No. 126-2 at 5, 7–8.

The testimony is now frayed leaving a few weak threads. The main one left is one that no court could ever render an opinion on. Fisher's theory is that support for DEI and LGBTQ causes is "totally opposed to biblical teachings" and "diametrically opposed" to what a pastor preaches, so the post made Plaintiff "look like a charlatan." ECF No. 123-1 at 59-60, 62, 192 (111:4–16, 112:10–18, 115:2–6, 341:6–25). The report says the same thing: the association "directly clashes with Biblical teachings," and the cure is a program to "portray him as a virtuous clergyman with good character." ECF No. 121-2 at 36, 39. However, when Plaintiff's counsel was telling Fisher

RANDAZZA | LEGAL GROUP

what to write, they did so apparently without recalling that the First Amendment bars a civil court from rendering judgment on those issues. For the harm Fisher claims to exist to be a thing at all, the Court must first determine that equality and DEI are incompatible with Christianity. The First Amendment forbids civil courts to resolve "controversies over religious doctrine and practice." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–09 (1976). That bars the claim. ECF No. 124 at 15–17. For the same reason, it makes Fisher's testimony useless. Rule 702(a) only allows expert testimony that will help the trier of fact "determine a fact in issue." If a court cannot constitutionally determine an issue, then the expert cannot help it with that issue.

**4.2 "Not Erased by a Prompt Takedown"**

The residual harm after something is taken down is a question that can be answered by measuring what is still out there. Was an allegedly defamatory post copied, archived, reshared, or indexed? Can anyone searching for the plaintiff now find it? Even an inattentive malcontent in a hurry would *ask* these questions. Mr. Fisher never tried to determine Plaintiff's online reputation before the post and testified there was "no way" to do so. ECF No. 123-1 at 165 (298:6–7). He never tried to measure it after either. He does not know how many people saw, shared, or commented on the post (*id.* at 77 (135:6–14)), never saw any social media posts by anyone, including Defendants (*id.* at 187 (327:18–21)), and cannot identify a single republication (*id.* at 186-87 (326:16–327:5)). He cannot name a single internet archive and had never heard of the Wayback Machine. *Id.* at 121-22, 124 (211:11–212:8, 214:6–14). He had never even heard of the monitoring platforms his field uses to track whether content persists. *Id.* at 166 (299:4–13); ECF No. 121-3 at 7–9. His only look at the internet was one Google search. And it was not even a useful one, because he did not clear his cookies or disable personalization, and did not even know that Google personalizes results, which would then skew them. ECF No. 123-1 at 117, 119 (204:1–14, 209:3–10). He did not even know when he did the search, and did not preserve it. He at least agreed his search "wouldn't say anything about '25'" and "can't be replicated." *Id.* at 117, 119, 124, 126 (204:10–21, 209:3–10, 214:15–20, 218:16–21). The two experts who actually did the work of

*experts* did look for this vital information, and they found nothing that persisted of the post except coverage of this lawsuit. ECF No. 126-2 at 4; ECF No. 121-3 at 11–12; *see* Section 6.0. Fisher offers an opinion that there is lingering harm that persists even after the post was removed, but he never even checked nor explained why. He just, again, said what Plaintiff's counsel told him to say. That is not an expert opinion based on sufficient facts or data. Fed. R. Evid. 702(b). That would not even pass for decent support for an argument people shouting at each other on the street, much less what should be accepted in a federal court.

But Fisher does give us something – he is adept with adages. "You can't un-ring a bell," which his report says applies "regardless of whether it is true or not." ECF No. 121-2 at 28. This brief compared his adages to fortune cookies, but on reflection that is unfair to fortune cookies. At least those have nutritional value.

Regarding his bell that cannot be un-rung, that analogy falls apart because Fisher apparently has no metaphoric ability to comprehend that a rung bell does fade and eventually stop vibrating. When he was asked how much more harm two years of exposure would cause versus a few hours, he said, "I don't know that it matters whether it was up two years or two months," and called that "a supposition, obviously." ECF No. 123-1 at 185 (325:15–18). Asked about the effect of the post: "I don't think anyone has an actual clue." *Id.* at 213 (368:14–25). His report says the post "would have most assuredly resulted in the 'word of mouth' factor." ECF No. 121-2 at 29. What was his evidence? "*Well, I don't have any evidence*." ECF No. 123-1 at 147 (259:6–15).

His report is entirely self-defeating. It says the "extent and longevity" of any harm "is still to be determined," and that "to fully assess the degree of the reputational harm," "some research and analysis would need to be conducted." ECF No. 121-2 at 39, 44. Fisher's next expert opinion is that the harm "will undoubtedly be long lasting." That great wisdom is found in a paragraph that Fisher labeled personal opinion and Plaintiff withdrew. *Id.* at 45. Just before the deposition page Plaintiff cites, Mr. Fisher endorsed a jury award "within that range." What range? The $2.65 million to $5.589 million range (*id.* at 43), which is the very range Plaintiff withdrew as soon as it was challenged. ECF No. 128 at 7; ECF No. 123-1 at 54-5 (105:19–106:2).



RANDAZZA | LEGAL GROUP

Plaintiff offers *Story Parchment* (ECF No. 128 at 6–8), but it governs how a jury fixes the amount of damages once the fact of damage is proven; it says nothing about Rule 702. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562–63 (1931).

The argument that the Defendants made measurement "impossible" is false. ECF No. 128 at 7. The post came down the day that the Plaintiff's agents demanded that it come down, so they cannot be faulted by Smothermon for doing what Smothermon demanded they do.

There are indeed tools for measuring reach, persistence, and sentiment. ECF No. 121-3 at 7–9, 15–16. *Mr. Shupe used them*. Mr. Fisher decided that he would not. ECF No. 121-2 at 39, 42–43. And Plaintiff relies on *Platinum Properties* where the court barred a reputation expert from testifying to the extent of harm because he showed no methodology for it. ECF No. 128 at 7. That sounds familiar. Mr. Fisher's "method" is to gather information, analyze it, and reach conclusions. ECF No. 121-2 at 24–25. That is not a methodology. As Fisher said of his own research: "The gal out there could have done the same thing as I do." ECF No. 123-1 at 157 (280:9–14) (referring to the receptionist at the court reporter's office).

**4.3 The Repair Budget Was Not Disclosed and Is Built Around the Verdict**

Mr. Fisher's report says he "projected costs for each of the activities and program elements" but "will not delineate them." ECF No. 121-2 at 42. Rule 26(a)(2)(B)(i) required that disclosure, and the breakdown (to the extent it can be called that) arrived the day of his deposition. ECF No. 123-1 at 198, 203 (353:7, 358:19). Plaintiff does not dispute the timing or claim the failure was substantially justified or harmless, which is his burden. Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001). What matters is the basis "as disclosed in his expert report"; later testimony can't fill the gap. *Engilis*, 151 F.4th at 1051–52. Plaintiff's response, that Defendants "examined him on components" at the deposition (ECF No. 128 at 7), is the problem. They did so using a document produced that day.

But even if it were not a procedural nullity, the substance of that late-introduced card with no information, just prices (as if it were a menu) does not carry any Rule 702 burden. The report pegs the budget to the verdict: Mr. Fisher refused to itemize it because the program depends on



RANDAZZA | LEGAL GROUP

RANDAZZA | LEGAL GROUP

"[t]he result of the litigation," since a win "would validate that he is a virtuous and reputable clergyman." ECF No. 121-2 at 42–43. He says that any remediation can only start once "the trial is over, assuming that the plaintiff prevails," because a verdict "gives him hell of a launching board." ECF No. 123-1 at 201-02 (356:17–357:19). But this expert says, four pages earlier, that the harm exists "[r]egardless of whether the Plaintiff prevails." ECF No. 121-2 at 38. He says the amount of the remediation cannot be determined until the outcome of the trial. But if the remediation depends on the trial result, how can it be evidence of what the result should be? And let us not forget that *no American court can rule that he is a clergyman of any kind, much less "reputable" or "virtuous."* The First Amendment bars this.

The constituent components of this "plan" have no rates, no quotes, just a $250-an-hour audit, "about" $25,000 for a website, search optimization at "about 2,000 a month" that he said he got from a conversation with a vendor that he did not retain, and video work from an unnamed "video guy." ECF No. 123-1 at 201–208 (356:9–363:10). Mr. Fisher "will have nothing to do with this program." *Id.* at 204 (359:5–7). And how could he? It does not exist, nor is he qualified. The last program he actually claims to have run was at the turn of the century, and the report's other "80 such programs" were created "in cases as an expert witness." *Id.* at 12-13 (17:20–18:5); ECF No. 121-2 at 38. Mr. Rose's report gets it right: "A single blended number with no components behind it is not a budget. It is a guess dressed up as one." ECF No. 121-3 at 21.

## 5.0 *CARROLL* MATTERS BECAUSE OF WHAT THE REPORT OMITS

Defendants don't rely on the fact that Judge Kaplan also wisely excluded Mr. Fisher, so *Heller* is irrelevant. ECF No. 128 at 8. *Carroll* matters because Fisher's only evidence of acceptance is that he claims that the methodology "has been accepted and validated by both federal and state courts" while it omits both *Carroll* exclusions and a recent Massachusetts ruling against him. ECF No. 121-2 at 23, 38; ECF No. 123-1 at 48-9 (99:1–4, 100:3–24).

//

//

RANDAZZA | LEGAL GROUP

## 6.0 EXPERTS SHUPE AND ROSE DID THE WORK THAT FISHER DID NOT

Plaintiff argues that Defendants cannot challenge Mr. Fisher because they designated reputation experts of their own. ECF No. 128 at 4. Rule 702 asks whether this witness's opinions are reliable, not whether a subject could ever be the subject of expert testimony.

Any reputation expert must answer some key questions. One of them is "Who saw the post?" Mr. Shupe ran 11 Meltwater queries across more than 20 platforms, seven Google searches, four Grabien broadcast searches, and four X searches, for both Smothermon and Smotherman and for both Defendants, plus image searches for both names. ECF No. 126-2 at 4–5. A Meltwater query for any item containing both Smothermon and Smotherman returned zero results. *Id.* at 131. Shupe checked using the tools of this trade.

Mr. Fisher does not know how many people saw the post, and he "never identifies a single third party who received, forwarded, discussed, or acted on the post." ECF No. 123-1 at 77 (135:6–14); ECF No. 121-3 at 4. What was Plaintiff's reputation before? Mr. Shupe and Mr. Rose each measured the pre-existing baseline, on different platforms, and found the same thing. ECF No. 126-2 at 5–6; ECF No. 121-3 at 11. That is replicability. Did anything persist after the takedown? Mr. Shupe searched the two weeks around the post and the 11 months after it, and found nothing that would tie Plaintiff to Cracker Barrel, to Mr. Smotherman, or to being "woke," aside from coverage of this lawsuit. ECF No. 126-2 at 4–5.

Fisher? He ran one undated Google search that he cannot replicate. ECF No. 123-1 at 126 (218:16–21). Shupe listed every search term and date window, quoted every prompt, and attached eighteen exhibits of exports and screenshots. ECF No. 126-2 at 4–8, 60–131. Mr. Fisher's work is "not merely incomplete but irreproducible at every point that matters to his conclusions" (ECF No. 121-3 at 22), and he agrees: "Nobody else can do it." ECF No. 123-1 at 158-59 (281:22–282:4).

Mr. Shupe also asked the question Mr. Fisher should have: what would someone looking up the plaintiff see today? Shupe asked the AI tools people now use and provided their answers in full. ECF No. 126-2 at 5, 7–8. None hinted at Plaintiff being woke, being tied up with LGBT advocacy, or with Cracker Barrel. Plaintiff's counsel was offered his deposition and answered,

"We'll let you know if we want to depose Shupe." ECF No. 101-9 at 2. He never did. So the record gives us one expert whose work Plaintiff never tested, and one whose work Plaintiff can defend only by running to outdated law and hoping it is a question of weight.

Plaintiff does not respond to Rose's takedown of the rest of Fisher's report. The four adages "are not evidence, and standing alone they are not a methodology." ECF No. 121-3 at 7. The field's actual tools are media monitoring, sentiment assessment, and search-visibility review. *Id.* at 7–8 & nn.11–12. Mr. Fisher used none of them. He never even heard of them. On incognito mode and metadata, he was "functioning as a conduit for someone else's advocacy." *Id.* at 6. Mr. Rose found that his "conclusions track the position of whichever party retained him, rather than a fixed, reliable methodology." *Id.* at 18.

**7.0 CONCLUSION**

The Court should exclude Mr. Fisher's report and testimony. In the alternative, the Court should enter an order excluding the opinions Plaintiff concedes and those he doesn't defend, as identified in Section 2, and exclude the bogus repair budget under Rule 37(c)(1).

Dated: November 4, 2026.

Respectfully submitted,
RANDAZZA LEGAL GROUP, PLLC
/s/ Marc J. Randazza
Marc J. Randazza, NV Bar No. 12265
Ronald D. Green, NV Bar No. 7360
Alex J. Shepard, NV Bar No. 13582
8991 W. Flamingo Rd., Ste. B
Las Vegas, NV 89147

*Attorneys for Defendants*
*Keith Hodge, Kevin Hodge,*
*and Hodgetwins, LLC*

RANDAZZA | LEGAL GROUP

Case No. 2:25-cv-01858-APG-BNW

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 4, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza

RANDAZZA | LEGAL GROUP